Good morning, your honors, and may it please the court. My name is Lynette Petruska, attorney for the appellant, and I've asked to reserve five minutes on rebuttal. Briefly, this is an employment discrimination case where my client alleged First Amendment retaliation. Mr. Landwehr was replaced as the public works director for the City of Gerald at the meeting immediately following a municipal election by the mayor and two aldermen. Mr. Landwehr supported his brother's candidacy for mayor, and Mr. Waymire, who was the successful candidate for mayor, was heard at the polls that day by another candidate saying that Mr. Landwehr's support for his brother would be reason enough to get rid of him, and that because of a mailing that was attributed to my client Brad Landwehr being distributed during the campaign, that was also reason enough to get rid of him. That's the background of the case, but the two real issues that we've raised in this case is one is a Batson challenge, and the other one is an issue about exclusion of evidence. With respect to the Batson challenge, during Vordier, the defendant struck veneer person number seven, a Mr. Williams. He was the only African American on the 22-person panel. A Batson challenge, and everybody agrees on the standard to be applied here in terms of analyzing the Batson challenge, but a Batson challenge is analyzed by seeing whether there's a prima facie case that the strike was motivated by race, and then the party that made the strike is required to provide the neutral reasons for the strike, and then the court is required to take into account all of the evidence to determine whether or not the strike was motivated by purposeful discrimination. What's our standard of review? You are to give deference to the trial court as the finder of fact, and so I do acknowledge that, but in the Snyder- It's a clear error standard, right? Correct, yes. In the Snyder case, what the Supreme Court said is that the court has to look at all of the circumstances that bear on the issue of racial animosity, and that if the explanation that's given is itself unconvincing, that can be grounds enough for this court to find that there was a Batson error. And what's the evidence of racial animosity? In this particular case, I would rely on what the Supreme Court also did in Miller L. You've got a juror here who would be an ideal witness for the defense. In Miller L., it was an ideal witness for the prosecution, and this juror is saying things that would generally have the person that's on that side of the case keep that juror because they're saying things that make it sound like they would be favorable to the case. Yeah, but Miller L., I clerked that term, and that was an entirely different case. There was a history, as I recall, of racial discrimination in the prosecutor's office, and we don't have anything like that here. And I don't disagree with that, Judge, but you can gather that kind of evidence when you've got a prosecutor's office, and you can see a pattern in practice because they're repeatedly taking certain actions before court. When you're involved with civil litigants like us, and the Supreme Court has made it clear that Batson applies equally to civil cases as criminal cases, that part of the analysis is almost always going to be virtually impossible to make. And so I think then you have to look at whether the articulated reasons for the challenge, you know, it's the same thing that we're doing in the underlying discrimination case. Are the articulated reasons, which are always going to be race neutral, really nothing more than pretext to disguise illegal discrimination against an African-American juror? Well, it seems to me that you have material in this record that would indicate that the reason given was not well supported, namely that the juror, prospective juror, seemed uncertain about his ability to follow instructions because that juror had six or eight times before said, yes, I certainly can. And then I guess on the ninth try of the district court, he said, yeah, I'll try. And so I don't see that as an equivocal record of this juror's attitude toward the case. And I want to be clear, Judge, my argument would be, and I may be agreeing with you, that, right, when you ask somebody repeatedly if they can do something and then they say yes, that that does not show equivocation. And then when you ask that last time and they're kind of frustrated and they basically say, well, I'll try. Or if you would have said, I'll do my best. I don't see that as equivocation. I mean, this is a man who the whole series of those questions. I'm sorry. There's a whole series of those questions. Correct. To which he gave to put to put it to put it sort of bluntly. He gave the right answer. Yes, I could be fair. And then there was this last one when he said, well, I'll try. And wasn't there a white perspective, white juror that said something similar to that? That is correct, Your Honor. There one at trial. The defendants gave four reasons for striking this juror. Actually, I would argue that one of the reasons was was suggested by the court and the defendants jumped on that reason. They really gave three and then kind of joined into this other reason that was offered by the court. But one of the reasons they gave was that they were concerned about him having had a negative experience as a defendant. And there was a Caucasian female. She didn't. She she had said that she had a her experience wasn't totally satisfactory. So, I mean, she used different words, but she also made it clear that she had not been totally satisfied by the outcome being a plaintiff in a civil case. And there was no strike of the white juror when she was dissatisfied with the outcome of a case. And actually, Mr. Williams hadn't said he was dissatisfied with the outcome of the case. He had said he was dissatisfied with the way it was handled. I'm assuming that that might relate to his attorney. You know, again, if, you know, a lawyer listening to those words, you've got a defendant who is somewhat dissatisfied with how his case was handled. You could you could make the conclusion that he's going to be defense friendly in that case and keep him. Another issue that we raise in the in the briefs that's also addressed by the Supreme Court is this whole issue of if they were so concerned about whether Mr. Williams could be fair and impartial or whether he equivocated, why didn't they ask follow up questions, which they were certainly free to do and they didn't do any of that. And so the follow up questions aren't asked because I think it shows evidence that the decision had already been made that we're basing this decision on stereotypes, not upon what Mr. Williams said that would would qualify. Well, let me let me challenge you a little bit, because, you know, all of the all of the reasons given, or at least most of them strike a consistent theme, which is that this juror may be more unpredictable than most because he comes in with with personal experiences with the legal system. He's not he says he's not sure he'll try, but he's not sure that he can be impartial. And, you know, I'm just I'm just sort of throwing sort of what I'm thinking that they might have been might have been thinking about out there, which is we've got a good case or we think we've got a good case. And what we don't want is an unpredictable juror. And this juror might just be too unpredictable for us. Isn't that a legitimate non-discriminatory reason that is supported by what happened here? I would say no, not again because of the record. And right. So two of the reasons they give is that he's a wild card and that they think that he's that they have a difficulty predicting his view on the case. But this is a juror who already said, I'm an employer. You know, I I do this. I know what it's like to be an employer. I know what it's like to have to hire and fire people. And as an employer, I believe employers should be able to fire somebody for any reason, even in a legal reason. So I don't think his views on the case are unpredictable. I think they're somewhat predictably defense friendly, which, again, is evidence that would support a finding that this was intentional discrimination. Just out of curiosity, why if he's so if you view him as so pro defendant, why not? Why did the plaintiff strike him? If you really want to know the answer, Judge, I will. We had a heated debate about this. I had co-counsel and my client was there. We had a heated debate about this in our room. And luckily, I was right because I was the one based on my experience. I kept telling my my co-counsel and my client, we don't have to strike this guy. The defendants are because he's African-American. We don't have to do it. And they kept arguing with me and saying he's he is too much of a danger for us to have on the jury for us not to strike him. I mean, they they were they you know, if I'd have been wrong about that, I probably would have had to surrender my license that day because it was such a huge tactical blunder. But I was correct. I mean, they did do that. Maybe this is an unusual situation where we have counsel testifying, but since we do, let me ask you a question. And that is why were you so sure they were going to do that? Only because he was African-American, Judge. I mean, he was the only African-American on the panel. And, you know, that that was my only reason, Judge. I'm sorry to say that, but it's true. I'm sorry to say that, Judge. I'm sorry to say that. So it's just a matter of us looking and asking ourselves, are we do we do we have a firm and clear conviction here that it was wrong? Is that is that your view of the standard of review? I don't disagree with that, Judge, but I do understand that that at the stage I am, it has to be a firm conviction. I mean, I have I have a high burden here, and I believe that we've met that using the totality of the circumstances. But it's not as high as it sounds. If you want to if you want to make if you want to make my row a little less harder to row, I am I am agreeable to that. And that would probably be a good time for me to take a break. And I'll try to address the second issue in my rebuttal. May police court. Morning, Mr. Berry. As some of the questions addressed in this Petresca recognize this appeal, like almost all of them, turn on the standard of review and the standard of review for the first. I'm sorry, counsel. Could you move the mic up a little? We haven't also spent a lot of money on this podium. You've got a little motor there. You push a button and raise it, raise it up. How's that work? Is this better? OK, good. Thank you, guys. Thank you. Thank you. The standard of review is the court is correctly identified. And as the appellant of appellant is correctly acknowledged is that there has to be clear in the decision. The the the problem with this is, is the trial court is essentially evaluating the people who are making the strike. And it's important to recognize that in the context of striking jurors, the only one we're not we're talking about is not juror number seven. There are lots of them out there. And in the course of doing that, my experience has always been you sit there and you pick at them and you look and you decide how to exercise a group of strikes individually. And in this particular case, the question we had is we're not exactly sure how this guy is going to deal with deciding the case, not what his leanings were, not what his predispositions were. We weren't sure how he was going to take the instructions and apply them to the evidence. And the point, I think, is very well made. And my partner and I talked about it during trial quite a bit. Well, you're never sure about what a jury is going to do, right? Never. So so why is this person a particular wildcard? He just struck us as a concern. The main reason is we had race neutral reasons for those concerns that had nothing to do with him being African-American. And again, he probably if he were the only if if if it were between. Well, let's put it this way. He probably wasn't the first one that we chose to strike. There were others that we were more concerned about. That's why they're peremptory challenges. You don't need to have a reason. You simply can't do it for a racially motivated reason. And the way that the district court did it is the way that the case law lays out that it's supposed to be done. And that is we have a chance to explain ourselves and the district court without having witnesses and cross examination and all the rest of that is essentially a fact finding by the district court of what the attorney articulates is a reason. And based on all the factors that a district court considers when evaluating anybody that's talking in front of them, they concluded that the district court, Judge Ross, concluded that we had a race neutral reason for striking this individual and we did. When I'm reading the transcript of the proceedings I did, it seemed to me that he, this particular gentleman, had said a number of times, at least half a dozen, that he could follow the court's instruction and be fair. And all of those other general statements that jurors are expected to make. And it was only the very last time when the judge asked him, for what might have been the eighth or ninth time, can you be fair, he said, I'll try. I mean, I don't understand why that's a record of equivocation on his ability to follow the law. Well, I would observe that those were questions that Judge Ross was directing to juror number seven. And he apparently had some of those concerns as well. But is that the basis on that? It was partly based on his examination of the prospective juror that you made your decision, right? No doubt. So, I don't, okay. Yeah, no doubt. But again, he'd had a bad experience with a case that he'd had before, notwithstanding the fact that he'd indicated that he felt that an employer could indeed discharge anybody for any reason they wanted. If I were convinced that that was exactly what his mindset was, well, of course, we probably wouldn't have stricken him. But he had a bad experience with the judicial system before, with the case, with some aspect of it. And we don't know how that leaves people. That was as much of a concern as the fact that he said, I'll try, in connection with the decision about fire, the question about fire. There was a Caucasian prospective juror who had indicated, I believe it was she, that she'd had a problem with previous litigation and expressed some dissatisfaction. Isn't that correct? I can't remember that, Your Honor. I'm assuming that it's in the record or the court wouldn't have asked me that. I don't recall that juror in particular. I just remember that it was my concern with respect to this one. And, again, you just don't know how some people leave those things. And we're watching a voir dire. We have an observation of what's going on in the room and an observation of the people as they're being asked and as they're answering questions. Some of the behavior of a prospective juror obviously doesn't really appear in the record. It can't be judged on appeal. That's exactly right. That's why we have this clearly erroneous standard because often, with any credibility finding, a district court is required to make a determination based on a lot of things that the district court sees that don't appear in the record, which is precisely the reason for the clearly erroneous standard. So it occurs to me that the district court has an opportunity to observe the counsel as well in his or her explanations, which is, I guess, kind of grounds for the application of the familiar principle that findings of fact are often left to the fact finder because the fact finder has had the chance to observe the demeanor of the person who's testifying. And there is a case that we cite in our brief that says exactly that. These are credibility determinations that are made by the trial court in the moment of the time that it's going on in the trial. And obviously, we didn't give the trial court the indication that we were exercising this decision for a racially motivated reason and that, again, it is very much like any other finding of fact. I wasn't under oath at the time and my partner wasn't under oath at the time that we were there speaking to the trial court, but he's making a decision about what we're saying. He's making a decision based on the information provided by the prospective jurors. He's got the ability to see these things that we don't have the ability to project or explain in this court, and that's why the standard is so high for reversing on the basis of a Batson challenge and why the standard is so high for reversing any fact finding that the trial court makes that's supported by any evidence in the record. With respect to the exclusion of evidence, it wasn't discussed during the appellant's initial presentation here to the court, but the appellant's offered some evidence of both the Missouri statute, section 79.240, which governs the discharge of municipal employees in Missouri fourth class cities, and some ordinances that were adopted by the city of Gerald. The trial court correctly exercised its discretion in the standard of review for the exclusion of evidence is for clear and prejudicial error on the part of the trial court, and in this instance, the exclusion of these particular pieces of information made the trial clean. If we put copies of statutes and we put copies of ordinances into the record, we're not dealing with a procedural due process claim here, but what you do have is the prospect of confusing the jury about whether or not the following or not following of any of these rules, procedures, ordinances, or statutes has some bearing on the validity of the claim, and in this case, the statute, section 79.240, overrides any of the ordinances. I would contend the ordinances were followed, if not to the letter to the spirit and consistent with past practice of the city of Gerald in the discharge of Mr. Landwehr. Just one other point, and I don't know if it's in the record anywhere, but Mr. Landwehr was not African American. This had nothing to do with affinity or anything like that. Our decision was purely because we felt uncomfortable having nothing to do with juror number seven's race. The trial court, I believe, correctly accepted that, and the decision of the trial court with respect to both points that have been briefed by the appellant, Mr. Landwehr, in this case, those should be overruled, and the decision and judgment on the jury verdict of the trial court should be affirmed. Just a quick question, because I had that same thought, whether the plaintiff's race matters. Is that a relevant consideration? I don't know the answer to that, Your Honor, but most of the case law that has evolved and come before all of the courts in connection with Batson cases, I think the bulk of them are criminal cases where, historically, African American jurors had been excluded from deliberation in criminal cases wherein African Americans were charged. There are civil cases the same, but I don't know that it is a judicial consideration that weighs as heavily as the fact that we're simply dealing with a trial court finding. But the typical motive that the Batson case and the line of Batson cases arises from is to exclude a member of the jury on grounds that they have potentially a racial affinity with the person who is a party to the case. We don't have any of that here. Thank you all very much. Thank you. To address briefly a few points related to the Batson issue, Judge, in response to your question about if the plaintiff is white, does race matter? And I don't have the site for this, but we addressed this issue in Moran v. City of St. Louis. It was a case decided by the 8th Circuit. And the issue was when race is such a central part of the case because it was a white police officer accused of beating up an African American challenged man, or an African American man that was mentally challenged. I'm sorry if I got those in reverse order. And the concurring opinion was that in that kind of a charged case, race should matter. But the majority opinion was none of that matters. What really matters is the juror being excluded because of his race. So the issues that are surrounding the case don't matter. It's whether the strike is being made for a race-based reason. And so I did want to address that since you'd raised that question. I also wanted to point out that in this particular case, the defendants only used two strikes. So if they were struggling, and that's in the record. And so if they're struggling about who to strike and not to strike, why not use all three? And then I also wanted to point out that the articulated reasons at trial, so there were four, are reduced to two on appeal because some of those reasons aren't supported by the record. So I do think, well, I do recognize that the trial court has some fact-finding function here. I think that when the reasons change over time, that gives you a unique opportunity to look at whether those reasons are, again, pretense or pretext for illegal discrimination. So that we can find it easier. Do you recall which juror it was that was the similarly situated Caucasian juror?  I can't remember offhand. I know it's in my reply brief is where I raised that issue. But I don't remember her number offhand. To address the issue of the evidence very quickly, we were required – the defendants argued that they had a neutral reason and not a retaliatory reason for this discharge, which was this whole custom and practice of we always replace our people when we have an election, which was every year. The evidence showed that that didn't really happen every year. We wanted to present the documents. In our brief, we cite this, you know, the plaintiff has the difficult burden of trying to convince a jury that the articulated reason wasn't the true reason. We wanted this to show that that wasn't the true reason. And I do think it would have changed the result. Thank you, Your Honors. Very well. Counsel, the court appreciates your briefing and arguments today. The case will be submitted and decided in due course.